UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| SUSAN INGRAM,<br><br>    Plaintiff,<br><br>    v.<br><br>KIRBY RISK CORPORATION,<br><br>    Defendant. | Case No. 4:22-CV-069-GSL |

**OPINION AND ORDER**

This matter is before the Court on Defendant's Motion for Summary Judgment. [DE 20]. For the following reasons, the Court GRANTS Defendant's motion.

**A. Factual Background**

On July 22, 2019, Defendant hired Plaintiff to work as a Production Assembler at one of its industrial manufacturing facilities, located in Lafayette, Indiana. [DE 25-1, ¶¶ 2, 9]. Plaintiff's primary job responsibility was assembling electrical wire harnesses. [*Id.* at ¶ 9]. Shortly after her first day on the job—on August 15, 2019 and on August 27, 2019—Plaintiff had two seizures while at work. [*Id.* at ¶¶ 13, 18]. In both instances, Plaintiff lost consciousness, collapsed, suffered memory loss, and was taken to the hospital in an ambulance. [*Id.* at ¶¶ 14–16, 19–20]. On August 28, 2019, the day after her last seizure, Plaintiff suffered a third medical episode at work that required immediate medical attention, caused memory loss and lethargy, limited her locomotion, and prevented her from finishing her shift. [*Id.* at ¶¶ 22–26]. Defendant informed Plaintiff that she needed to see her personal physician and get a work release before returning to work, and then sent her home in a taxi because she was not in a condition to drive herself after this third incident. [*Id.* at ¶¶ 25–26].

Later that afternoon on August 28, 2019, Plaintiff's personal medical provider faxed a letter to Defendant that placed Plaintiff under certain work restrictions—including no driving, no heights, and no operating near or around heavy machinery until seizure free for six (6) months. [*Id.* at ¶ 27]. Requiring clarification on the proximity restriction, Defendant requested Plaintiff seek more specific guidelines from her medical provider regarding "near or around heavy machinery." [*Id.* at ¶ 33]. On September 5, 2019, Plaintiff's medical provider faxed to Defendant an updated list of restrictions, specifying that "near or around heavy machinery" meant being "within 10 feet of heavy machinery." [*Id.* at ¶ 34].

Defendant found Plaintiff's work restrictions problematic because the facility in which Plaintiff worked was populated throughout with industrial machinery and vehicles—e.g., forklifts, tuggers, braiding machines, etc. [*Id.* at ¶¶ 3, 38–39]. Defendant determined that no vacant positions in that facility could comply with Plaintiff's restrictions, nor could any other openings in Defendant's other facilities in the greater Lafayette area. [*Id.* at ¶¶ 40–41]. On September 6, 2019, Plaintiff asked Defendant what was required for her to come back to work, and Defendant informed her that any restrictions needed to be determined by her own medical provider. [*Id.* at ¶ 42–43]. On September 9, 2019, Plaintiff's medical provider called Defendant, and she was initially connected to Defendant's medical office but was subsequently directed to Rebecca Shane of Defendant's HR department. [*Id.* at ¶ 45–48]. Plaintiff's medical provider asked Ms. Shane how Plaintiff's work restrictions should be rewritten. [*Id.* at ¶ 48]. Ms. Shane explained that Defendant was not asking the medical provider for the restrictions to be rewritten but only that she determine whether restrictions were needed, such that Defendant could try to accommodate them. [*Id.* at ¶ 49]. The medical provider did not modify any of the restrictions. [*Id.* at ¶ 50]. On September 11, 2019, Defendant terminated Plaintiff's employment because it

2

could not accommodate her restrictions. [*Id.* at ¶ 51]. However, Defendant invited Plaintiff to reapply for employment if her restrictions changed. [*Id.* at ¶ 52].

On November 12, 2019, Plaintiff filed a claim with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging that Defendant failed to reasonably accommodate her seizure disorder. [*Id.* at ¶ 53]. The EEOC dismissed this charge on July 29, 2022. Plaintiff filed the instant action against Defendant on September 26, 2022. [*Id.* at ¶ 56]; [DE 1].

**B. Standard of Review**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of" the evidence that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To survive a properly supported motion for summary judgment, "the nonmoving party must present evidence sufficient to establish a triable issue of fact on all elements of its case." *McAllister v. Innovation Ventures, LLC*, 983 F.3d 963, 969 (7th Cir. 2020).

There exists a genuine dispute of a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party on the evidence presented. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, the court may not make credibility determinations, weigh evidence, or choose between reasonable inferences from the facts. *Id.* at 255. Such is within the providence of the jury, not the judge. *Id.* Instead, the court must view all the evidence in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party. *Id.*

3

**C. Discussion**

Plaintiff alleges that Defendant violated the American with Disabilities Act ("ADA") for failing to provide her a reasonable accommodation for her disability. [DE 1]. In order to establish a prima facie case for this claim, "a plaintiff must show that: (1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability." *Kotwica v. Rose Packing Co.*, 637 F.3d 744, 747–748 (7th Cir. 2011) (quoting *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir.2005)). Further, after an employee discloses her disability to her employer, "the ADA obligates the employer to engage with the employee in an 'interactive process' to determine the appropriate accommodation under the circumstances." *Sears*, 417 F.3d at 805 (quoting *Gile v. United Airlines, Inc.*, 213 F.3d 365, 373 (7th Cir.2000)). In this case, Defendant does not dispute the first two elements of the ADA claim. [DE 21]. Instead, the parties disagree on the third element—providing a reasonable accommodation—and on whether Defendant fulfilled its obligation to engage in an "interactive process" to determine the appropriate accommodation. [*Id.* at page 2]; [DE 25].

There is no independent cause for liability from a breakdown in the "interactive process" under the ADA. *Igasaki v. Illinois Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 961 (7th Cir. 2021) (citing *Sansone v. Brennan*, 917 F.3d 975, 980 (7th Cir. 2019)). Instead, liability only arises when the breakdown in the interactive process resulted in a failure to identify a reasonable accommodation. *Id.* Therefore, the Court will first determine whether there is a genuine issue of material fact regarding the availability of a reasonable accommodation; if there isn't one, the

4

analysis stops.[1] *Sears*, 417 F.3d at 805; *see Igasaki*, 988 F.3d at 961 ("This is because in this area of the law, we are primarily concerned with the ends, not the means.") (internal citation and quotation marks omitted).

Plaintiff's work restrictions—provided by her medical provider—required that she not drive, stand on ladders or similar, *nor be within 10 feet of heavy machinery* for at least 6 months. [DE 25-1, ¶ 34]. Understandably, these are necessary precautions to protect the safety of a person who is prone to seizures, collapsing, and unexpectedly losing consciousness. To the extent that these restrictions were to be updated, clarified, or modified, the obligation fell to Plaintiff. *See Steffes v. Stepan Co.*, 144 F.3d 1070, 1072 (7th Cir. 1998) ("Given the blanket nature of these restrictions, the obligation fell to Steffes to update or further clarify the kinds of work she could do and the level of chemical exposure, if any, she could tolerate."); *see also Beck v. University of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1136 (7th Cir.1996) ("Where the missing information is of the type that can only be provided by one of the parties, failure to provide the information may be the cause of the breakdown and the party withholding the information may be found to have obstructed the [interactive] process."). Since Plaintiff nor her medical provider made any changes to her work restrictions, Defendant evaluated the availability of any reasonable accommodations with the "10 foot" restriction in mind. [DE 21, page 5]. This Court will do the same.

---

[1] The parties dedicate a substantial amount of briefing arguing whether a breakdown in the "interactive process" occurred and which party caused the alleged breakdown. [DE 21] and [DE 25]. These arguments involve factual disputes regarding whether Plaintiff requested an accommodation or otherwise triggered the "interactive process", whether both parties were actively participating in the "interactive process," whether Plaintiff's medical provider stonewalled Defendant, etc. [*Id.*]. Since the Court ultimately determined that no reasonable accommodation existed in this case, none of these other arguments by the parties regarding the "interactive process" will be addressed.

Plaintiff worked in Defendant's factory on the assembly floor. [DE 25-1, ¶¶ 2, 9]. This facility is an industrial site that contains multiple high-powered workstations and heavy machines. [DE 21, page 6]. Even more significant, there are numerous industrial vehicles, like forklifts and tuggers, that move around constantly on the assembly floor. [*Id.*]. The danger posed by these vehicles is so significant that Defendant maintains and enforces strict Pedestrian Safety rules. [DE 25-1, ¶ 5]. The rules are "designed to ensure that employees see and hear the moving industrial equipment to prevent severe injuries or death that could result from collisions . . . ." [DE 21, page 7]. Plaintiff's medical condition would make it very problematic for her to work in such a dangerous environment. *See Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276 (7th Cir. 2015) ("The ADA does not require an employer to walk 'on a razor's edge—in jeopardy of violating the [ADA] if it fired such an employee, yet in jeopardy of being deemed negligent if it retained [her] and [s]he hurt someone'") (quoting *Palmer v. Circuit Court of Cook Cnty., Ill.*, 117 F.3d 351, 352 (7th Cir.1997)).

In her response to the instant motion, Plaintiff proposes possible accommodations— seemingly for the first time. [DE 25, page 13]; *see* [DE 25-1] and [DE 27] (no evidence cited to demonstrate Plaintiff suggested any accommodations while still employed). Plaintiff's proposals, however, miss the mark for being a "reasonable accommodation." First, Plaintiff proposes erecting barriers around work areas to protect her but does not provide any evidence suggesting that this is actually possible. [DE 25, page 13]. Defendant's factory has heavy machinery throughout the assembly floor; building barriers around each of these workstations to accommodate one employee is not reasonable. *Cf. Braddock v. United Parcel Serv., Inc.*, No. 14-CV-03839, 2017 WL 770973, at *5 (N.D. Ill. Feb. 28, 2017) (holding that turning up the thermostat in a certain facility to accommodate an employee is "prohibitively expensive and

6

unreasonable as a matter of law"). This accommodation also disregards the danger posed by the industrial vehicles moving around the assembly floor. Second, Plaintiff proposes a few other accommodations involving other employees that would have to "periodically check[]-in-on" her or have to "take special care to observe" her during her shift. [*Id.*]. This accommodation is not reasonable because the ADA does not require "an accommodation that would result in other employees having to work harder or longer . . . ." *Dey v. Milwaukee Forge*, 957 F. Supp. 1043, 1052 (E.D. Wis. 1996); *see* 29 C.F.R. § 1630.2(p)(2)(v) ("[T]he impact of the accommodation upon . . . the ability of other employees to perform their duties" is a factor to be considered for the undue hardship of a possible accommodation"). Third, Plaintiff argues that there was a job vacancy in Defendant's Rensselaer location in a counter sales position. [*Id.* at page 16]. However, as Plaintiff concedes, the counter sales position requires that the employee be able to operate a forklift and drive a delivery van. [*Id.*]; [DE 20-8, page 9, 22:18–24]. Plaintiff argues that this role could have been modified such that she is not required to perform either of those tasks, but this is not reasonable. [DE 25, page 16]. The Rensselaer location is very small, staffed with few employees, and each employee is expected to be qualified to staff the location alone. [DE 26, page 8]; [DE 20-8, page 9, 23:2–24:6]. As such, Plaintiff was not qualified for this position because of her medical restrictions. Lastly, Plaintiff argues that she would have been willing to move outside the greater Layfette area for a job transfer. [*Id.* at page 13]. However, no offered evidence suggests that any open positions existed for which Plaintiff was qualified. *See* [DE 25-1] and [DE 27].

Plaintiff has been unable to demonstrate that a reasonable accommodation was available, and Defendant could not ascertain one with due diligence. The Court concludes that there is no

7

genuine dispute over the fact that no reasonable accommodation existed in this case. Therefore, summary judgment in favor of Defendant is appropriate.

## CONCLUSION

The Court hereby GRANTS Defendant's Motion for Summary Judgment [DE 20]. The Court DIRECTS the Clerk of Court to enter judgment against Plaintiff and in favor of Defendant. Plaintiff takes nothing by her Complaint.

SO ORDERED.

ENTERED: July 29, 2024

/s/ GRETCHEN S. LUND
Judge
United States District Court